In the UNITED STATES DISTRICT COURT for
the DISTRICT of KANSAS

Kent Thomas Warren,

Plaintiff

v.                                                            Case: 5:19-cv-04094-SAC-ADM

University of Illinois-Champaign/Urbana,

University of Arizona-Tucson,

Southern Illinois University-Carbondale,

Northern Arizona University-Flagstaff,

Western Governors University-Utah,

Defendant(s)

## RESPONSE in OPPOSITION to DEFENDANT WESTERN GOVERNORS UNIVERSITY-UTAH MOTION to DISMISS

### NATURE of the RESPONSE

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are

[1]

> warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Federal Rules of Civil Procedure, Rule 11.

## STATEMENT of FACTS

1. Defendant, Western Governors University-Utah states "Plaintiff entered...", "Plaintiff allegedly attempted entry...", "Plaintiff claims he entered...", and "Plaintiff does not provide a description of what entry means." (*see generally* Doc. 8. Motion to Dismiss for Failure to State a Claim, at I. Nature, acknowledged subsequently herein as Doc. 8.).

2. Defendant states plaintiff was allegedly denied entry to Southern Illinois University-Carbondale and Northern Arizona University-Flagstaff. (*see* Doc. 8. At I. Nature).

3. Plaintiff's complaint, Doc. 1. Complaint of 5:19–cv–04094–SAC–ADM, acknowledged subsequently herein as Doc.1., mentioned in Doc. 8 by defendant provides the following information:

   a. ¶3.

      i. "In 2006, plaintiff enters Southern Illinois University-Carbondale SIU-C, (Doc. 5. SIU-C Transcript)";

      ii. "in 2007, plaintiff withdraws from Southern Illinois University-Carbondale";

      iii. "plaintiff asked for due process, prior to entrance, and was declined and/or ignored by admissions"; and,

      iv. "plaintiff was informed of due process safeguards, equal protection, and a biased assessment, in a course for Early Childhood Education";

      v. "plaintiff also researched 8 C.F.R. §214 et seq. and Messick's view of validity, noting context may alter assessment, ("requirement" imposed by the State of Illinois at this time) (Doc. 7.

[3]

        Messick); plaintiff researched 59 Il. Ad. §132.25 and noticed permitted applications for those with work experience equivalent to that of a degree holder for a mental health professional (both credentials from Arizona, see below, and Illinois can be considered to be diploma mills on their face-unknown to plaintiff if the State offered formal trainings"

  b. ¶4

    i. "plaintiff re-enters University of Arizona-Tucson, in 2010… and subsequently withdraws (Doc. 4. U of A Transcript)";

  c. ¶5

    i. "Plaintiff moved to a homeless shelter in Flagstaff, Arizona and transferred to Northern Arizona University-Flagstaff (Doc. 9. NAU Transcript)"

4. Defendant states the focus of the submission is the plaintiff's attempt to assert a claim against all defendants under 42 U.S.C. §2000d for an alleged violation of his constitutional rights. (Doc. 8. I. Nature).

5. Defendant states in Section II. Statement of the Question Presented of Doc. 8, "The issue before the Court is whether Claim A of Plaintiff's complaint (Doc.1) for alleged violation of 42 U.S.C.

[4]

§2000(d), states a claim against WGU upon which relief can be granted."

6. Plaintiff's complaint, Doc. 1., states:

    "B. Claim.

    Plaintiff hereby incorporates by reference all paragraphs and all sub-elements of any paragraph containing a sub-element of Statement of Claim Section A. as if set out in full herein and made a part hereof.

    University of Illinois-Champaign/Urbana, University of Arizona-Tucson, Southern Illinois University-Carbondale, Northern Arizona University-Flagstaff, and Western Governors University-Utah violated 42 U.S.C. §2000d by excluding the plaintiff, an United States citizen, from participation in a program receiving federal financial assistance by reason of national origin, denied the plaintiff the benefits of a program receiving federal financial assistance by reason of national origin, and subjected the plaintiff to discrimination by reason of national origin through failure to provide non-discriminatory admissions requirements (work/life experience equitable to degree standing) to an United States citizen, the plaintiff, comparable to that of a foreign national, non-immigrant."

    Plaintiff further explains and details the relief and damages (compensatory) to be provided, *see* Doc. 1.

7. Defendant states in Section III. Argument and Analysis. Subpart B of Doc. 8.:

[5]

"Section 601 prohibits against instances of intentional discrimination and not disparate impact practices. *Id.* At 281, 121 S.Ct.1511. In the absence of direct evidence of discrimination, the McDonell Douglas burden-shifting analysis governs § 1981 and Title VI Claims"… "under Title VI, plaintiff must show that (1) he is a member of a protected class; (2) he suffered adverse action; (3) that he was treated less favorably that similary situated students"… "National origin is narrowly defined and relates to ethnicity or ancestry rather than citizenship or alienage. See, e.g. *Espinoza v. Fara Mfg. Co.* , 414 U.S. 86, 93, 94 S.Ct. 334,38 L.Ed.2d 287 (1973) "Plaintiff in his complaint does not allege that he is member of a recognized protected class. In his complaint, Plaintiff alleges that he is a United States Citizen. He does not purport to be a minority based on race, gender, sexual orientation, or any other classification that would entitle him to protection under 42 U.S.C. § 2000(d). He does not assert that his ancestors belong to a protected group based on their national origin. Plaintiff merely states a legal conclusion that he has been discriminated against based on his national origin. He has not asserted that he was treated less favorably than similarly situated students. Plaintiff's only allegation, which is conclusory in nature, is his failure to get into these universities. Ultimately, Plaintiff has put forth no allegation directly tying his denial of entry into WGU to discriminatory practices based on his national origin."

8. Defendant further explains in Doc. 8 Section III Subpart C. the plaintiff's claim is time barred through analogous sections 1983 and 1982.

9. Plaintiff states in paragraph 29 of Doc. 1.: Kansas Statutes Annotated, K.S.A....44-1005(i)

> "Any complaint filed pursuant to this act must be so filed within six months after the alleged act of discrimination, unless the act complained of constitutes a continuing pattern or practice of discrimination in which event it will be from the last act of discrimination."

## RESPONSE

The plaintiff has provided a foundation of facts that articulate, through general knowledge and meaning, his entrance to several universities. These being the University of Illinois-Champaign/Urbana, University of Arizona-Tucson, Southern Illinois University-Carbondale, Northern Arizona University-Flagstaff, and Western Governors University-Utah. The defendant has articulated facts within Doc.8. Section I that are incompatible with the filing of the plaintiff and are not fairly construed to administer justice in a meaningful time in a meaningful manner. The defendant states the plaintiff has not articulated a foundation of what entry means, yet the defendant consistently uses the same/similar phrase throughout without defining its meaning, a frivolous articulation of the facts submitted by plaintiff not grounded in reason

[7]

by claiming the plaintiff was allegedly denied admissions even though the plaintiff specifically mentions withdrawing from universities, coursework administered-with citations, transferring to a university and incorrectly cites a paragraph in regards to Northern Arizona University-Flagstaff, designating paragraphs three and four as basis of this contention. Northern Arizona was mentioned in paragraph five. The defendant further states the McDonnel Douglas burden-shifting analysis governs section 1981 and Title VI Claims. Nowhere in Doc.8, does the defendant explain the origin of the sections cited- the defendant has cited sections 1981, 1982 and 1983; however, there is not one reference throughout Doc. 8 as to the origin of these (1981, 1982, 1983) sections.

The McDonnel Douglas burden-shifting analysis governs section 1981 and Title VI Claims, according to defendant, is used in the absence of direct evidence, yet, the plaintiff articulates in Doc.1 Paragraph 3 when he researched 8. C.F.R. 214 et seq., articulates again in paragraph 10-8 C.F.R.§ 214.2(h)(4)(iii)(C)(4)(1995-2017) as proscribed in 8 C.F.R.§ 214.2(h)(4)(iii)(D)(1995-2017), A nonimmigrant may "…have education, specialized training, and/or progressively responsible experience that is

equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and have recognition of expertise in the specialty through progressively responsible positions directly related to the specialty" 8 C.F.R. §214.2 (h)(4)(iii)(C)(4)(1995-2018) and 8 C.F.R.§ 214.2 (h)(4)(iii)(D) (1995-2018), and fully explains the dates he researched this information throughout the claim, finding a foreign national-nonimmigrant may use education, experience and/or training equitable to that of a United States Baccalaureate or higher to gain entrance to a profession. The defendant further states national origin is narrowly defined, yet the Equal Opportunity Commission, states otherwise- "The Commission defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group" 29 C.F.R. § 1606.1 with the scope of protection at 29 C.F.R. § 1606.2, Title VII. Furthermore, from the Department of Justice Title VI Manual:

> "The analysis of intentional discrimination under
> Title VI isequivalent to the analysis of disparate
> treatment under the Equal Protection Clause of

[9]

the Fourteenth Amendment. Elston, 997 F.2d at 1405 n. 11; Guardians, 463 U.S. at 582, Alexander, 469 U.S. at 287, 293; Georgia State Conference of Branches of NAACP v. Georgia, 775 F.2d 1403, 1417 (11th Cir. 1985). To prove intentional discrimination, one must show that "a challenged action was motivated by an intent to discriminate." Elston, 997 F.2d at 1406. This requires a showing that the decisionmaker was not only aware of the complainant's race, color, or national origin, but that the recipient acted, at least in part, because of the complainant's race, color, or national origin. However, the record need not contain evidence of "bad faith, ill will or any evil motive on the part of the [recipient]." Elston, 997 F.2d at 1406 (quoting Williams v. City of Dothan, 745 F.2d 1406, 1414 (11th Cir. 1984)). Evidence of discriminatory intent may be direct or circumstantial and may be found in various sources, including statements by decisionmakers, the historical background of the events in issue, the sequence of events leading to the decision in issue, a departure from standard procedure (e.g., failure to consider factors normally considered), legislative or administrative history (e.g., minutes of meetings), a past history of discriminatory or segregated conduct, and evidence of a substantial disparate impact on a protected group. See Arlington Heights v. Metropolitan Hous. Redevelopment Corp., 429 U.S. 252 at 266-68 (1977) (evaluation of intentional discrimination claim under the Fourteenth Amendment); Elston, 997 F.2d at

[10]

1406. In the absence of such evidence, claims of intentional discrimination under Title VI may be analyzed using the Title VII burden shifting analytic framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."

The entire motion was designed to waste court time, present frivolous legal contentions, not supported by fact in law in context, and was only presented in hopes the plaintiff errors as a pro se, Fed. R. Civ. Pro. Rules 12(d) and 11.

Date: 1/5/2020

Kent Thomas Warren, Pro Se

1301 W. 24th St. E18

Lawrence, KS 66046

785-592-0259

warrenknt@aol.com